UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| F & A DAIRY PRODUCTS, INC., | Civil No. 06-3291 (JRT/FLN) |
| Plaintiff / Counterclaim Defendant, | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| HB ENGINEERING, INC., | |
| Defendant / Counterclaim Plaintiff. | |

Brent A. Lorentz and David A Davenport, **WINTHROP & WEINSTINE**, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402; for plaintiff.

Daniel J. Boivin, **MESHBESHER & SPENCE**, 1616 Park Avenue South, Minneapolis, MN 55404; for defendant.

Plaintiff, F & A Dairy, Inc. ("F&A"), entered into a contract to purchase from defendant, HB Engineering, Inc. ("HB"), a machine to dry whey at an F&A dairy facility in Las Cruces, New Mexico. After the machine did not perform to F&A's expectations, it retained the final payment of the contract price and filed this suit claiming that HB is responsible for paying the costs of repairing the machine. HB filed a counterclaim denying any obligation to make repairs unless or until F&A remits the full price negotiated in the contract. F&A filed this motion for summary judgment both on its claims and the counterclaims. For the reasons discussed below, the Court denies the motion.

## BACKGROUND

F&A is in the business of manufacturing and selling dried whey, a byproduct of the cheese making process. HB, a Minnesota corporation, designs and sells dryers for use at facilities such as those operated by F&A. F&A has two main operation sites—one in Wisconsin and the other in New Mexico.

F&A had purchased an HB dryer for use at its Wisconsin facility and wanted to purchase a similar dryer to replace the Filtermat dryer it had been using at its New Mexico facility. On November 21, 2003, F&A and HB entered into a written contract wherein HB agreed to design, manufacture, construct, and install a Tall Form Dryer System ("Dryer") for the New Mexico facility that was similar to the one F&A had purchased for its operations in Wisconsin. The total contract price for the New Mexico dryer was approximately $5,014,132, which was to be paid in installments with the final 5% of the contract price due upon "final commissioning" of the Dryer.

HB agreed in the contract to "furnish all labor, material, skill and equipment necessary or required to manufacture, construct and install" a dryer at the F&A facility in New Mexico. HB guaranteed "against defects in HB's workmanship for a period of two years from the date of final acceptance . . . and to guarantee against all defects in material" for a period of one year or longer if a longer period was provided by a pass through warranty. The contract specifies that the completed dryer would be capable of producing "5,718 pounds of mozzarella whey powder per hour."

The contract also contains a provision permitting F&A to retain a portion of the purchase price if certain conditions occurred. The contract permits F&A to withhold

from payment an amount sufficient to cover any claims that "have been made against HB Engineering or F&A Dairy arising out of labor or materials . . . or otherwise on account of any actions or failures to act by HB Engineering in the performance of this agreement."

HB finished construction of the Dryer in December 2004, but the Dryer failed to produce the quantity of whey specified in the contract. HB claimed the problems were caused by F&A's failure to use whey that was similar in nature and quality to that used at the Wisconsin facility, but F&A claimed that the Dryer itself was malfunctioning. HB made changes to the machine at that time even though it contended that the problems were caused by the use of inferior whey.

The Dryer continued to malfunction and failed to operate to F&A's expectations. As a result, F&A did not make the final payment on the contract[1] and instead retained a consultant to assess the Dryer and identify any problems with it. The consultant opined that the Dryer had not been adequately designed to accommodate both thermal expansion caused by the heat used to dry the whey as well as vibrations caused by operation of the machine. According to the consultant, those flaws caused cracks in the ductwork, timing belt, and fluid bed. The expert's report also indicated that the design failures caused the liquid whey stream to flow in reverse during certain portions of the drying process. Although the dryer was not performing at expected levels, F&A continued to operate the machine throughout this time period.

---

[1] The parties give conflicting numbers for the amount left unpaid on the contract. F&A claims $190,695.20 is left unpaid while HB claims F&A owes $262,661.25 under the contract.

F&A filed this lawsuit in August 2006, claiming HB breached the contract by constructing a defective dryer and failing to make repairs to it. It seeks relief based on claims of negligence, breach of contract, breach of express warranty, promissory estoppel, and unjust enrichment. F&A also claims that the contract is one for the sale of goods and is therefore governed by the Uniform Commercial Code, such that HB is also liable for breaching the implied warranties of merchantability and fitness for a particular purpose. HB responds that it has performed all of its obligations under the contract and that F&A has contributed to problems with the Dryer. It filed a counterclaim for breach of contract and account stated, asserting that F&A has breached the contract by failing to pay the full contract price and that it has no duties to make repairs to the Dryer until F&A pays the full price.

F&A filed this motion for summary judgment on May 30, 2007. It argues that HB is responsible for the problems with the Dryer and that summary judgment should be entered both on its claims and on the counterclaims asserted by HB. Along with its motion F&A submitted an expert report detailing the problems with the Dryer as well as an affidavit purporting to establish damages. That affidavit, submitted by an F&A officer at the New Mexico facility, states that F&A is entitled to an award of $624,304.80, which represents the cost of identifying the problems with the Dryer ($136,000), the cost to repair the Dryer ($429,000), the amount F&A has lost in profit because of Dryer problems ($250,000), minus the amount it claims is left unpaid under the contract ($190,695.20).

HB responded to the motion for summary judgment with an affidavit from its vice president, Rolf Brown.  Brown claims that at least some of the dryer problems were caused by the use of improper whey, that HB had communicated the importance of using a different kind of whey with F&A, and that F&A has further contributed to the Dryer problems by using an unreliable boiler and making it impossible for HB to monitor the situation.  Brown also claims that the damage request is grossly excessive given his estimation that it would cost less than $50,000 to repair the alleged problems with the Dryer and that it is not liable for any lost profit damages because the Filtermat dryer remains operable.  He also claims that F&A is required to pay HB the full contract price before HB is required to fix any remaining problems.

## ANALYSIS

**I.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court is required to view the facts in a light most favorable to the nonmoving party. *Jurrens v. Hartford Life Insurance Co.*, 190 F.3d 919, 922 (8th Cir. 1999). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine

issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.   CLAIMS BROUGHT AGAINST HB

F&A claims HB breached the contract as well as express and implied warranties by constructing a defective Dryer and not making repairs to it.[2] It relies on its expert report for establishing that the Dryer needs repairs and on its affidavit from Snyder, its Vice President of New Mexico Operations, for establishing the amount of damages as $624,304.80. HB concedes there may be defects with the dryer for which it may be responsible but asserts that factual disputes preclude entry of summary judgment because the damages claimed by F&A are excessive, because it is not responsible for making repairs until F&A complies with its obligation to pay for the full contract price of the Dryer, and because F&A caused at least some of the problems.

The Court turns first to HB's argument that summary judgment is inappropriate because F&A has not established as a matter of law that it is entitled to the damages it alleges. The only evidence introduced by F&A to establish its damages is the affidavit submitted by Snyder. With no supporting documentation, Snyder opines in the affidavit that F&A has "committed to expending $429,000 based on good faith repair quotes," that F&A "expended $136,000 in hiring a consultant to analyze the defects," and that it has

---

[2] F&A also sought relief in its complaint based on negligence, promissory estoppel, and unjust enrichment. It does not mention these claims in its summary judgment briefing, and the Court will not rule on the merits of these claims. The Court notes, however, it is unlikely F&A can prevail on at least a portion of these claims given the holding of the Minnesota Supreme Court that "the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction." *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990).

"lost an estimated $250,000 due to lost profits and internal repair costs." This affidavit alone is sufficient to establish a damage award, F&A contends, because HB has not conducted discovery and has no witnesses with personal knowledge competent to dispute the amounts.

A party bringing a breach of contract action has the burden of establishing damages, and a plaintiff may not prevail on claims for damages that are "speculative or conjectural." *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 653 (Minn. 1986); *see also Jackson v. Reiling*, 249 N.W.2d 896, 897 (Minn. 1977) (holding "[d]amages which are remote and speculative cannot be recovered"). Even if HB brought forth no evidence challenging the amount, F&A must present evidence of damages such that "no reasonable factfinder" would disagree with the amount requested. *See Fair v. Norris*, 480 F.3d 865, 871 (8th Cir. 2007). This is not the case here because the only evidence purporting to establish the amount of recovery to which F&A claims it is entitled is a conclusory affidavit that is supported by neither outside documentation nor independent verification.

The Court need not rely exclusively on the insufficiency of F&A's evidence alone, however, because HB has created a fact issue as to the amount of damages to which F&A is entitled. Rolf Brown, Vice President for HB, opines in his affidavit that F&A is not entitled to any damages for lost profits because F&A could have mitigated its damages by using the Filtermat Dryer while the HB Dryer was being repaired. S*ee, e.g.*, *Northwest Airlines, Inc. v. Aeroservice, Inc.*, 168 F.Supp.2d 1052, 1055 (D. Minn. 2001) (denying summary judgment motion where defendant claimed plaintiff failed to mitigate

damages).  He also states that it would cost less than $50,000 to repair the alleged defects, for a total damage award of less than that still owed under the contract.  These statements[3] are made with the same degree of specificity as those made in the F&A affidavit and are therefore sufficient to create a genuine issue of material fact precluding entry of summary judgment in favor of F&A.

F&A requests the Court grant judgment in its favor for $624,304.80.  Given that a factual dispute exists at least as to the proper amount of damages, the Court denies the motion.  It is therefore unnecessary at this time for the Court to reach HB's other arguments that F&A cannot proceed on its breach of contract claim without first paying the full purchase price and that F&A contributed to the problems with the Dryer.  F&A has not asked the Court for judgment as a matter of law only on the issue of whether the Dryer was defective, and the Court makes no such finding by issuance of this ruling.

### III.   COUNTERCLAIMS BROUGHT AGAINST F&A

HB asserts counterclaims against F&A for breach of contract and account stated, claiming that F&A is required to pay the full contract price.  F&A requests summary judgment in its favor on the counterclaims.  It maintains that as a matter of law it has the right to retain the final portion of the contract amount because the Dryer is defective and HB refused to pay for the repairs.  HB counters that there is an issue of material fact as to

---

[3] F&A asserts in its reply brief that portions of Brown's affidavit are not subject to consideration by the Court because the testimony amounts to expert testimony and Brown lacks the credentials to qualify as an expert and was not identified as a potential expert witness.  The Court need not reach the merits of that argument because the statements relied upon by the Court are statements of fact and not expert opinions.

whether the contract permits F&A to withhold payment in this situation because the claim did not arise until after the Dryer had been constructed. It also argues that summary judgment is inappropriate in any event because there is a dispute as to the amount of damages, if any, to which F&A is entitled.

There is no dispute that F&A has withheld a portion of the amount specified in the contract for the Dryer. It claims it is entitled to retain the payment because of Section B.8 of the agreement, which states:

> That if notification of any claims have been made against HB Engineering or F&A Dairy arising out of labor or materials furnished the Project or otherwise on account of any actions or failures to act by HB Engineering in the performance of this Agreement, F&A Dairy, may, at its discretion, withhold from such amounts otherwise due or to become due hereunder a sum adequate to cover said claims and any costs or expenses arising or to arise in connection therewith pending legal settlement thereof.

This language, according to F&A, permits retention of a portion of the purchase price where any claims are asserted against HB, even if the claims are for breach of contract or express warranty after HB completed construction of the Dryer, because the provision applies to "any claims" arising out of "any actions or failures to act by HB." Because the amount it claims in this suit ($624,304.80) is greater than the amount it claims is owed under the contract ($190,695.20), F&A maintains that it can as a matter of law withhold the entire amount left unpaid.

The interpretation, construction, and effect to be given language in a contract are questions of law for the Court unless the contract is ambiguous. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 66 (Minn. 1979). A contract is ambiguous, and therefore within the province of the jury, if the language is "reasonably susceptible of

- 9 -

more than one interpretation." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). The determination of whether a contract is ambiguous is a question of law for the Court. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346-47 (Minn. 2003).

Contract provisions must be interpreted in the context of the entire contract, *see Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp.*, 279 N.W.2d 349, 354 (Minn. 1979), and the effect of the language is not to be understood only from "isolated clauses." *Boe v. Christlieb*, 399 N.W.2d 131, 133 (Minn. Ct. App. 1987). F&A's interpretation of section B.8 is devoid of any mention of the remainder of the contract, even though the whole contract, specifically the "terms of payment" section, affects the provision relied upon by F&A. That section requires F&A to pay the full contract price upon "final commissioning of the plant." The parties did not define "final commission" in the contract, but the contract indicates HB was required to staff the dryer for three weeks "following commissioning . . . to start-up the installation." Assuming without holding that final commissioning took place upon completion of the construction, F&A was required to remit the full purchase price at that time. As a result, the provision permitting F&A to retain a portion of the contract price to "cover" claims would not apply to claims, such as those asserted in this case, that arose only after the Dryer had been operating and that were caused by operation of the fully constructed Dryer.

The isolated clause relied upon by F&A as giving it the right to retain the final portion of the purchase price does not unequivocally state that F&A may retain payment for claims brought by it against HB after construction of the Dryer. The drafters could

have stated with specificity that F&A had such a right, but the contract is not clear on this point. This absence of specificity combined with the contractual requirement that F&A make the final payment upon the Dryer being fully constructed makes the effect of the provision cited by F&A "reasonably susceptible of more than one interpretation." *See Art Goebel*, 567 N.W.2d at 515. As a result, the Court concludes that the cited provision is ambiguous and that interpretation of that provision is within the province of the jury. The Court denies F&A's motion for summary judgment on HB's counterclaims.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment dated May 30, 2007 [Docket No. 18] is **DENIED**.

DATED: August 31, 2007　　　　　　　　　　　　s/ John R. Tunheim  _
at Minneapolis, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge